# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00475-CV

**Hays County, Texas, Appellant**

**v.**

**Hays County Water Planning Partnership, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. 2000-0688, HONORABLE DON MORGAN, JUDGE PRESIDING**

## O P I N I O N

Appellant Hays County appeals a district-court judgment granting appellee Hays County Water Planning Partnership (the APartnership@) an injunction and attorney=s fees against the county. The district court found that Hays County violated: (1) sections 551.002 and 551.102 of the Texas Government Code (the AOpen Meetings Act@) and (2) provisions of the Texas Constitution, and the Texas Local Government Code. Tex. Const. art. I, ' 13; art. V, ' 18; Tex. Gov=t Code Ann. '' 551.002, .102 (West 1994); Tex. Loc. Gov=t Code Ann. ' 81.006(a) (West 1999). We will affirm in part and reverse and render in part.

## BACKGROUND

The present dispute began on May 16, 2000, when the Hays County Commissioners Court met and voted to approve the 2025 Transportation Plan for submission to the Capital Area Metropolitan Planning Organization (ACAMPO@). CAMPO coordinates transportation planning and approves the use of federal transportation funds for a large area of Central Texas in and around the Austin area, including Hays County. The plan contained the county=s recommendations for future roadways within its borders. The Partnership asserts that the county commissioners altered the plan that was approved at the May 16 meeting by making several significant changes to it, resulting in the county=s submission to CAMPO of a substantially different plan from that adopted at the meeting. Hays County rejoins that any alterations to the plan were made lawfully during the meeting and that, after the meeting, a single commissioner, Commissioner Burnett, delivered the appropriate map to CAMPO.[1] The county also urges that any problems with the map were corrected at a later meeting.

On May 25, the Partnership sued Hays County, alleging that the commissioners court had violated the Open Meetings Act by privately altering the plan. *See* Tex. Gov=t Code Ann. '' 551.002, .102. The Partnership later amended its pleadings to allege violations of the Texas Constitution and the Texas Local Government Code. Tex. Const. art. I , ' 13; art. V, ' 18; Tex. Loc. Gov=t Code Ann. ' 81.006(a). The Partnership sought, *inter alia*, a judgment declaring that Hays County Aviolated the Texas Open Meetings Act, the Texas Constitution, and/or Texas statutory law.@ *See* Tex. Civ. Prac. & Rem.

---

[1] The words Amap@ and Aplan@ are used interchangeably in this opinion. The transportation plan primarily consists of a map keyed to reflect the county=s future roadway-expansion projections.

2

Code Ann. '' 37.001B.011 (West 1997 & Supp. 2003). On May 30, the commissioners court met again. The commissioners heard public testimony and concluded the meeting by formally approving an altered version of the plan that Commissioner Burnett had originally delivered to CAMPO. The plan adopted at the May 30 meeting replaced the earlier plan and is now on file with CAMPO.

The series of plans that is the subject of this appeal has created a controversy since the county began devising a transportation plan. The commissioners court first contracted with a private company, Prime Strategies, to develop a proposed plan. After much heated community debate over the Prime Strategies plan, Commissioner Burnett suggested that a coalition of community members develop a new plan. The commissioners then formed the ABlue Ribbon Committee.@ The Blue Ribbon Committee=s plan was proposed at the May 16 meeting. Community members repeatedly remarked during the meeting that they were unhappy about the plan=s proposed extension of what is now Ruby Ranch Road (a neighborhood road) to FM 150. The plan would make Ruby Ranch Road the only connection between two highways (FM 967 and FM 150) and would necessarily increase traffic on the road. The proposed extension was indicated on the Blue Ribbon Committee=s map by a red dotted line.

Several of the commissioners voiced similar concerns during the meeting. According to the meeting=s official minutes, ACommissioner Carter spoke of it being clear that we cannot go through the subdivision and we need to remove Ruby Ranch Road from the priority matrix and let it remain a neighborhood road.@ Commissioner Burnett Aagreed that it does not make sense to put a major highway through an existing subdivision.@ He then made a motion to Aadopt the Blue Ribbon Committee=s plan as

3

proposed with the following changes:  that the Ruby Ranch Road be eliminated as a major arterial status and be returned back to the original status . . . .@

After the meeting, a Hays County staff member placed what he believed to be the changes that the commissioners adopted on May 16 on a map for Commissioner Burnett to deliver to CAMPO. When Commissioner Burnett saw the revisions, he noted that the dotted lines that were on the Blue Ribbon Committee=s plan had been removed, leaving Ruby Ranch Road unchanged from its current configuration. Commissioner Burnett instructed the staff member to mark Ruby Ranch Road in red and replace the dotted lines connecting it to FM 150.  The new map prepared by the staff member had other changes from the Blue Ribbon Committee=s original plan as well; however, only the Ruby Ranch Road change is at issue.

Hays County asserts that Commissioner Burnett=s change was merely a matter of interpretationCthat there was confusion at the May 16 meeting about what the commissioners meant, and that Commissioner Burnett interpreted the May 16 meeting in an appropriate way.  Specifically, the county argues that when Commissioner Burnett moved to Areturn [Ruby Ranch Road] to its original status,@ he understood his statement to mean to return that road to the way it is depicted in the plan devised by Prime Strategies.  The Prime Strategies map shows that Ruby Ranch Road will be widened to a four-lane road and will eventually connect to FM 150.  The record, however, leads this Court to conclude that the change made by Commissioner Burnett is an incorrect interpretation of the commissioners= May 16 action.

**STANDARDS OF REVIEW**

As to the Partnership=s Open Meetings Act claim, this Court conducts a *de novo* review, because the issue of whether the Open Meetings Act applies to the case at hand is a legal question;

4

construction of a statute is reviewed *de novo*. *In re E.I. du Pont de Nemours & Co.*, 92 S.W.3d 517, 522 (Tex. 2002).

We will apply a different standard to the Partnership=s constitutional and local government code claims. The Texas Constitution establishes the commissioners court as the county=s principal governing body. Tex. Const. art. V, ' 18. The powers and duties of the commissioners court include aspects of legislative, executive, administrative, and judicial functions. *Ector County v. Stringer*, 843 S.W.2d 477, 478 (Tex. 1992). The constitution vests appellate jurisdiction and general supervisory control over a county commissioners court with the district court, subject to such exceptions and regulations as the law may prescribe. Tex. Const. art. V, ' 8.

A party can invoke the district court=s constitutional advisory control over a commissioners court=s action only when the commissioners court exceeds its jurisdiction or clearly abuses the discretion conferred upon it by law. *Stringer*, 843 S.W.2d at 479 (citing *Tarrant County v. Shannon*, 104 S.W.2d 4, 9 (Tex. 1937)). The district court may also determine whether the commissioners court acted illegally or unreasonably. *Id.* at 478 (citing *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936)). However, in reviewing a commissioners court=s action for abuse of discretion, the district court may not substitute its own judgment and discretion for that of the commissioners court. *Id.* By arguing that the district court erroneously found that the commissioners court=s action was unreasonable, Hays County necessarily argues that the commissioners court=s actions were reasonable and within its discretion. Thus, the real question before us is whether the district court erred in finding that the commissioners court abused its discretionCput plainly, whether the Hays County Commissioners Court abused its discretion or

**5**

otherwise acted illegally when it presented the Astaff altered@ map to CAMPO.  *See Vondy v. Commissioners Court*, 714 S.W.2d 417, 420 (Tex. App.CSan Antonio 1986, writ ref=d n.r.e.).

This Court=s review of the actions of the Hays County Commissioners Court will focus on the commissioners court=s official minutes, because the commissioners court Aspeaks through its official minutes.@ *Maples v. Henderson County*, 259 S.W.2d 264, 268 (Tex. Civ. App.CDallas 1953, writ ref=d n.r.e.); *see also Gano v. Palo Pinto County*, 8 S.W. 634, 635 (Tex. 1888).  Thus, the crux of our review hinges on the May 16 commissioners-court meeting and whether reasonable minds could have interpreted the minutes in a manner consistent with the Astaff altered@ map that Commissioner Burnett delivered to CAMPO.

## DISCUSSION

On appeal, Hays County argues that the district court:  (1) erred in finding that the Hays County Commissioners Court violated the Open Meetings Act; (2) erred in finding that the Hays County Commissioners Court violated the Texas Constitution and the Texas Local Government Code; (3) erred in failing to dismiss the action for lack of subject-matter jurisdiction; (4) erred in failing to dismiss the action on grounds of Asovereign and/or legislative immunity@, and (5) abused his discretion in awarding attorney=s fees.

**Open Meetings Act**

By its first issue, Hays County asserts that the district court erred in finding that the Hays County Commissioners Court violated the Open Meetings Act.  *See* Tex. Gov=t Code Ann. ' ' 551.002, .102.  The Act provides:  A[E]very regular, special, or called meeting of a governmental body shall be open

**6**

to the public, except as provided by this chapter,@ *id.* ' 551.002, and Aa final action, decision, or vote on a matter deliberated in a closed meeting . . . may only be made in an open meeting that is held in compliance with the notice provisions of this chapter,@ *id.* ' 551.102. The Open Meetings Act defines a meeting as:

> (A) a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action; or (B) except as otherwise provided by this subdivision, a gathering:
>
> (i) that is conducted by the governmental body or for which the governmental body is responsible;
>
> (ii) at which a quorum of members of the governmental body is present;
>
> (iii) that has been called by the governmental body; and
>
> (iv) at which the members receive information from, give information to, ask questions of or receive questions from a third person, including an employee of the governmental body, about the public business or public policy over which the governmental body has supervision or control . . . .

*Id.* ' 551.001(4).

AGovernmental body@ includes Aa county commissioners court in the state.@ *Id.* ' 551.001(3)(B). AQuorum@ means Aa majority of a governmental body, unless defined differently by applicable law or the charter of the governmental body.@ *Id.* ' 551.001(6). The Texas Local Government Code states that three members of the commissioners court constitutes a quorum for conducting county business except for the levying of a county tax. Tex. Loc. Gov=t Code Ann. ' 81.006.

The parties do not dispute that the May 16 meeting was duly called and properly noticed as required by the Open Meetings Act. *See* Tex. Gov=t Code Ann. ' 551.041 (West 1994). They also agree that a quorum was present at the May 16 meeting and the vote on that date was taken in open session, as required by the act. *Id.* ' 551.102.

The Partnership alleges that a single commissioner and an employee altered the May 16 Blue Ribbon Committee=s map in a manner not in accordance with the May 16 commissioners-court action and that Commissioner Burnett delivered the improperly Astaff altered@ map to CAMPO. However, the interaction of Commissioner Burnett and the Hays County employee was not a Ameeting@ because a quorum of commissioners was not present. In order for there to have been a violation of the Open Meetings Act, a meeting must have occurred. *Id.* ' ' 551.002, .102. We decline to hold that the action of a single commissioner constitutes a violation of the Open Meetings Act and, therefore, sustain Hays County=s first issue.

**Subject-Matter Jurisdiction**

By its third issue, Hays County asserts that the Partnership=s action lacks subject-matter jurisdiction because: (1) the Partnership lacks standing; (2) there is no justiciable controversy; and (3) the Partnership failed to show harm entitling it to injunctive relief. Because subject-matter jurisdiction is a question of law, we review the issue *de novo. Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). This Court has previously held the Partnership does have standing in this controversy. *See Hays County v. Hays County Water Planning P=ship*, 69 S.W.3d 253 (Tex. App.CAustin 2002, no

8

pet.). However, our earlier decision considered standing with regard to the Open Meetings Act.[2] Because we have held that Hays County did not violate the Open Meetings Act, we must address the standing issue anew to determine if the Partnership has standing under the Texas Constitution or the Texas Local Government Code. *See* Tex. Const. art. I, ' 13; art. V, ' 18; Tex. Loc. Gov=t Code Ann. ' 81.006(a).

The Texas Supreme Court, in *Texas Ass=n of Business v. Texas Air Control Board*, set forth a three-prong Aassociational standing test@ to determine whether an organization has standing to file suit: (1) Aits members have standing to sue in their own behalf@; (2) Athe interests [the organization] seeks to protect are germane to the organization=s purpose@; and (3) Aneither the claim nor the relief requested requires the participation of individual members in the lawsuit.@ 852 S.W.2d 440, 447-48 (Tex. 1993).

To satisfy the test=s first prong, the Partnership must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the kind that would make a justiciable case if the members had brought suit in their own right. *Texas Workers= Comp. Comm=n v. Garcia*, 862 S.W.2d 61, 71 (Tex. App.CSan Antonio 1993), *rev=d on other grounds,* 893 S.W.2d 504 (Tex. 1995). A substantial risk of injury is sufficient. *Id.* The evidence in the record indicates that the Partnership is a community group whose members all live or own property in the area covered by

---

[2] This Court has also affirmed the Partnership=s Open Meetings Act standing in a previous dispute. *See Hays County Water Planning P=ship v. Hays County*, 41 S.W.3d 174 (Tex. App.CAustin 2001, pet. denied); s*ee also Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161 (Tex. App.CAustin 1996, orig. proceeding) (affirming standing for similarly situated citizens group).

the transportation plan. Testimony further indicates that even though the plan is prospective and not immediately effective, the published intention for future roadway development in the area does cause property-owner members of the Partnership potential and immediate economic loss with regard to their property values. Because the Partnership has demonstrated that its members could sue in their own right, it satisfies the first prong of the associational standing test.

As to the test=s second prong, the evidence shows that the Partnership was created to deal specifically with these kinds of community issues, *i.e.*, AHow things are developed in Hays County.@ Thus the interests that the Partnership seeks to protect through its lawsuit are germane to its organizational purpose. The second prong is satisfied.

Because the Partnership sought a declaratory judgment, it need not prove the individual circumstances of its members to obtain this relief, and it can be reasonably ascertained that the injunction imposed by the district court will benefit those members of the Partnership actually injured. *See Texas Ass=n of Bus.*, 852 S.W.2d at 448. The Partnership thereby meets the third and final prong of the test. We hold that the Partnership has standing to bring this action.

Hays County also asserts that the district court lacked subject-matter jurisdiction in this case because there is no justiciable controversy. It insists that the commissioners court=s transportation plan is only a suggestion that CAMPO may or may not accept and that regardless of whether the May 16 Astaff altered@ map was indeed the map voted on in the May 16 meeting, any possible injury caused by that mistake was Acured@ when the May 30 map was adopted by the commissioners court.

The separation-of-powers doctrine prohibits courts from issuing advisory opinions. *Id.* at 444. The distinct feature of an advisory opinion is that it decides an abstract question of law without binding the parties. *Alabama State Fed=n of Labor v. McAdory*, 325 U.S. 450, 461 (1945); *Texas Ass=n of Bus.*, 852 S.W.2d at 444. In order to ensure that courts do not issue advisory opinions, there must be a justiciable controversy. When seeking a declaratory judgment, the plaintiff must allege facts that demonstrate a real dispute involving an immediate, concrete outcome C that is, a justiciable controversy must exist as to the rights and status of the parties and the controversy must be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). In this case, the Partnership sued Hays County, alleging that the Hays County Commissioners Court violated the constitution, the government code, and the local government code by submitting an invalid plan to CAMPO. The district court remedied that injury by enjoining the Hays County Commissioners Court from ever using the invalid plan. A specific injury was remedied by a specific order. We hold that there is a justiciable controversy in this case.

Finally, Hays County asserts that the Partnership has failed to show harm that would entitle it to injunctive relief. Although the Texas Supreme Court has stated: ADistrict courts, under our constitution, do not give advice or decide cases upon speculative, hypothetical, or contingent situations,@ we do not view the facts before us presenting as a hypothetical situation. *Cf. Camarena v. Texas Employment Comm=n*, 754 S.W.2d 149, 151 (Tex. 1988) (holding that there was no subject-matter jurisdiction because legislature passed legislation that ameliorated plaintiffs= harm and thereby made injunction moot). The Partnership sued Hays County alleging that the Hays County Commissioners Court submitted an invalid plan to CAMPO.

**11**

The action was brought, in part, under the Uniform Declaratory Judgments Act (AUDJA@).  Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (West 1997).  The UDJA allows for injunctive relief ancillary to a declaration of rights in some situations:  AFurther relief based on declaratory judgment or decree may be granted whenever necessary or proper. . . .@ *Id*. ' 37.011 (West 1997).  Although the commissioners court has since adopted a new plan and has filed that plan with CAMPO, its action does not moot the Partnership=s declaratory-judgment action nor its ancillary claim for injunctive relief.  We overrule Hays County=s third issue.

## Sovereign and Legislative Immunity

By its fourth issue, Hays County asserts that the district court should have dismissed the Partnership=s action because the Hays County Commissioners Court is protected by sovereign and legislative immunity.  Although this Court has previously visited these issues, we dealt only with the Partnership=s Open Meetings Act claim.  *See Hays County*, 69 S.W.3d at 253.  We have today rejected that claim, and thus review the county=s assertions with regard to the Partnership=s other claims.

The State of Texas, its agencies and its officials are generally immune from a lawsuit for damages unless the legislature expressly waives that immunity, typically through statute or legislative resolution.  *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).  However, the Partnership sued Hays County, in part, under the UDJA.  The UDJA grants any litigant whose rights are affected by a statute, or as in this case the violation of the statute,  the opportunity to obtain a declaration of those rights under the statute.  Therefore, when the State is a necessary party to a UDJA action for a declaration of rights, sovereign immunity is expressly waived because, were the State not joined, the right to

**12**

a declaration would have no practical effect. *See City of La Porte v. Barfield*, 898 S.W.2d 288, 297 (Tex. 1995). The UDJA applies when a commissioners court is alleged to have taken an illegal action. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997) (county treasurer brought declaratory-judgment action against commissioners court and county auditor to challenge commissioners court=s decision to assign payroll functions to auditor). Thus, when a party brings a declaratory-judgment action to determine whether a commissioners court has acted illegally, immunity from suit is waived by the UDJA. The UDJA provides: AFurther relief based on a declaratory judgment or decree may be granted whenever necessary or proper . . . .@ Tex. Civ. Prac. & Rem. Code Ann. ' 37.011. The UDJA potentially waives sovereign immunity when a party seeks the ancillary relief of an injunction with a declaration. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). As applied to the instant case, the Partnership brought suit against Hays County seeking declaratory and injunctive relief based on allegations of the commissioners court=s acting outside its authority, specifically by violating the Texas Constitution, and the Texas Local Government Code. Tex. Const. art. I, ' 13; art. V, ' 18; Tex. Loc. Gov=t Code Ann. ' 81.006(a). The legislature has, through the UDJA, waived sovereign immunity for such an action. *See Leeper*, 893 S.W.2d at 446.

Legislative immunity protects individuals from personal liability for actions performed in their legislative capacity. *In re Perry*, 60 S.W.3d 857, 860 (Tex. 2001). The purpose of legislative immunity is to prevent lawsuits from interfering with the legislative process. *See Supreme Court v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731 (1980). Courts have extended the legislative-immunity doctrine to cover not only state and federal *legislators,* but also Aother individuals performing legitimate

**13**

legislative functions.@ *Perry*, 60 S.W.3d at 860. The commissioners court necessarily performs legislative-type actions as part of its official duties. *Stringer*, 843 S.W.2d at 478. This would seem to indicate that the Partnership=s case is barred by legislative immunity; however, the Partnership sued neither the individual commissioners nor the Hays County Commissioners Court. The Partnership brought suit only against the county itself. Although legislative immunity protects the individual commissioners from personal liability, the county does not share the commissioners=immunity. *See Merrill v. Carpenter*, 867 S.W.2d 65, 68 (Tex. App.CFort Worth 1993, writ denied). We hold that the Partnership=s suit against Hays County is not barred by either sovereign or legislative immunity. We overrule Hays County=s fourth issue.

**Constitutional and Local Government Code Violations**

By its second issue, Hays County asserts that the district court erred when it found that Hays County had violated the Texas Constitution and the Texas Local Government Code. Tex. Const. art. I, ' 13; art. V, ' 18; Tex. Loc. Gov=t Code Ann. ' 81.006(a).

Article I, section 13 of the Texas Constitution provides: AAll courts shall be open, and every person for an injury done him, in his lands, goods, or reputation, shall have a remedy by due course of law.@ Tex. Const. art. I, ' 13. Although some case law has been interpreted to deem commissioners courts subject to the Aopen courts@ provision, the most often cited cases do not expressly state that proposition. *See Rowan v. Pickett*, 237 S.W.2d 734 (Tex. Civ. App.CSan Antonio 1951, no writ); *Swaim v. Montgomery*, 154 S.W.2d 695 (Tex. Civ. App.CAmarillo 1941, writ ref=d w.o.m.); *Tarrant County v. Smith*, 81 S.W.2d 537 (Tex. Civ. App.CFort Worth 1935, writ ref=d). Each of these cases

14

held that commissioners cannot bind the county by their separate, individual action. *Rowan*, 237 S.W.2d at

738; *Swain*, 154 S.W.2d at 697; *Smith*, 81 S.W.2d at 538.

Commissioners courts do not readily fit within the context of an article I, section 13 court.

Although commissioners courts do have the word Acourt@ in their title, they do not perform the same

functions as the courts of the judiciary. Article V, section 18 of the Texas Constitution delegates the duties

of commissioners courts: AThe county commissioners court . . . has none of the functions of a court, but is

the governing body of the county.@ Tex. Const. art. V, ' 18 interp. commentary (West 1993). Further,

although the Texas Supreme Court has referred to *Rowan*, *Swain*, and *Smith*, the Court did not mention

article I, section 13; instead, the Court decided the issues before it under article V, section 18. *Canales v.*

*Laughlin*, 214 S.W.2d 451, 455 (Tex. 1948) (commissioners court=s order to create a new county office

and hire a specific employee was challenged and voided as outside commissioners court=s statutory

authority). We hold that the Aopen courts@ provision of the Texas Constitution is not applicable to

commissioners courts, and sustain Hay County=s second issue to the extent that the district court found that

the county had violated the Texas Constitution=s Aopen courts@ provision.

Article V, section18 provides:

> Each county shall, in the manner provided for justice of the peace and constable precincts,
> be divided into four commissioners precincts in each of which there shall be elected by
> qualified voters . . . . The County Commissioners so chosen, with the County Judge as
> presiding officer, shall compose the County Commissioners Court, which shall exercise
> such powers and jurisdiction over all county business, as is conferred by this Constitution
> and the laws of the State, or as hereafter prescribed.

**15**

Tex. Const. art. V, ' 18(b). Three members generally constitute a quorum for conducting county business. Tex. Loc. Gov=t Code Ann. ' 81.006(a).

The commissioners court may only validly act as a body; the acts of a single commissioner do not bind the court. *Canales*, 214 S.W.2d at 455 (Aindividual commissioners have no authority to bind the county by their separate action@); *Eastex Wildlife Conservation Ass=n v. Jasper*, 450 S.W.2d 904, 907 (Tex. Civ. App.CBeaumont 1970, writ ref=d n.r.e.) (ACounty can act only through the Commissioners= Court, the individual Commissioners having no authority to bind the county by their separate actions.@).

Other courts, while not explicitly citing article V, section 18, have also held that the commissioners court may not be bound by the actions of one of its members: AThe Commissioner=s [sic] Court can act only as a body and when in an official meeting. It is a court of record and speaks through its official minutes. No member of the court acting alone may bind the Court or the County. No member of the Court acting alone may determine the Court=s intention in the matter of road construction.@ *Maples*, 259 S.W.2d at 268 (citing *Gano*, 8 S.W.2d at 635); *see also Rowan*, 237 S.W.2d at 737; *Swaim*, 154 S.W.2d at 697; *Smith*, 81 S.W.2d at 538.

Although the law is clear that commissioners may not act on their own, it is not clear, at least as a matter of procedure, that Commissioner Burnett was in factAacting on his own@when he instructed the staff member to change the map. We do not believe it uncommon for staff to speak with a commissioner for clarification in order to properly perform staff duties. However, this Court must determine whether Commissioner Burnett=s instructions were sufficiently different from the May 16 vote to effectuate the commissioner impermissibly Aacting on his own.@ In essence, this question rests on whether Commissioner

**16**

Burnett=s instructions were a reasonable interpretation of the commissioners court=s will as expressed at the May 16 meeting and reflected in the minutes of the meeting. If so, this Court will read Commissioner Burnett=s actions as merely instructing the staff member as to what the commissioners court had approved in order to aid that staff member in properly performing his task. Again, we turn to the official minutes of the May 16 meeting to determine whether that interpretation was reasonable.

The May 16 minutes reflect that ACommissioner Carter spoke of it being clear that we cannot go through the subdivision and we need to remove Ruby Ranch Road from the priority matrix and let it remain a neighborhood road.@ Commissioner Burnett Aagreed that it does not make sense to put a major highway through an existing subdivision.@ He then made a motion to Aadopt the Blue Ribbon Committee=s plan as proposed with the following changes: that the Ruby Ranch Road be eliminated as a major arterial status and be returned back to the original status . . . .@ The minutes and the various maps that were prepared through the process of forming the 2025 Transportation Plan make it clear that the commissioners court did not intend for Ruby Ranch Road to be a major arterial thoroughfare.

Hays County has asserted that when Commissioner Burnett proposed a vote that Ruby Ranch Road be Areturned to its original status,@ the motion meant that the Prime Strategies description of that road would be substituted for that in the Blue Ribbon Committee=s plan. However, we do not believe this to be a reasonable interpretation of the commissioners court=s action. The Astaff altered@ map does resemble the Prime Strategies plan with regard to Ruby Ranch Road, but the Prime Strategies description does not address the issues that were considered and voted on at the May 16 meeting.

The Prime Strategies map shows that Ruby Ranch Road will be widened to a four-lane road and will eventually connect to FM 150. The Astaff altered@ map is identical to that of Prime Strategies except that the proposed number of lanes is not marked on the map adjacent to the road. Instead, the Astaff altered@ map, like the Blue Ribbon Committee=s map, contains a legend indicating that solid red lines demarcate Amajor arterial status.@

Whether intentional or inadvertent, the effect of Commissioner Burnett=s changes made Ruby Ranch Road a proposed major arterial with a later connection to FM 150. The alterations based upon the Commissioner Burnett interpretation of the commissioners court=s May 16 action differ from what the minutes reflect the commissioners actually approved. Although it is arguable that Commissioner Burnett was merely trying to execute the commissioners court=s will as he understood it from the May 16 meeting, and this Court has no reason to believe otherwise, his interpretation was not that expressed in the meeting=s minutes. We hold that because the Astaff altered@ map that Commissioner Burnett delivered to CAMPO is not an accurate interpretation of the commissioners court=s May 16 action, it is invalid and may not be utilized for any purpose. *See* Tex. Const. art. V, ' 18; Tex. Loc. Gov=t Code Ann. ' 81.006(a).

Because the Astaff altered@ map is invalid, enjoining the county from its use is unnecessary. The UDJA allows for injunctive relief ancillary to a declaration of rights in some situations: AFurther relief based on declaratory judgment or decree may be granted whenever necessary or proper. . . .@ Tex. Civ. Prac. & Rem. Code Ann. ' 37.011. This power to grant relief is conditioned on such relief being *necessary and proper*. *See Leeper*, 893 S.W.2d at 432 (upholding declaratory judgment but reversing permanent injunction because injunction would serve no practical purpose). In this case, the Hays County

**18**

Commissioners Court validly passed a new 2025 Transportation Plan at its May 30 meeting and filed it with CAMPO. There is no indication that the commissioners court intends to use the earlier invalid map. We are confident that the commissioners court will abide by our decision in carrying out its duties. We conclude that the permanent injunction is unnecessary and should be dissolved. We overrule the remainder of Hays County=s second issue.

**Attorney=s Fees**

By its fifth issue, Hays County asserts that the district court erred in awarding the Partnership attorney=s fees. The district court awarded attorney=s fees to the Partnership under the Open Meetings Act as well as the UDJA. Tex. Gov=t Code Ann. ' ' 551.002, .102; Tex. Civ. Prac. & Rem. Code Ann. ' 37.009. Although this Court has held that the Open Meetings Act is inapplicable to this case, the UDJA allows an award of attorney=s fees at the district court=s discretion. Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (AIn any proceeding under this chapter, the court may award costs and reasonable and necessary attorney=s fees as are equitable and just.@). The UDJA applies when a commissioners court is alleged to have taken an illegal action. *See Agan*, 940 S.W.2d at 77.

The standard of review of a trial court=s award of attorney=s fees is abuse of discretion. *Id.* (citing *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985)). The Texas Supreme Court has elaborated on this standard:

> [T]he Declaratory Judgments Act entrusts attorney fee awards to the trial court=s sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. It is an abuse of discretion for a trial court to rule arbitrarily,

**19**

unreasonably, or without regard to guiding legal principles . . . or to rule without supporting evidence . . . .

*Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (citations omitted). The Partnership presented sufficient evidence that their attorney=s fees were necessary and reasonable. We cannot say that the May 30 commissioners court meeting and the delivery to CAMPO of the properly passed transportation plan would have occurred without the Partnership=s action. We hold that the district court did not abuse his discretion by awarding the Partnership attorney=s fees. Tex. Civ. Prac. & Rem. Code Ann. ' 37.009. We overrule Hays County=s fifth issue.

## CONCLUSION

We reverse the district court=s judgment to the extent that it finds that Hays County violated the Open Meetings Act and the Open Courts provision of the Texas Constitution and render judgment that the Partnership take nothing against the county by such claims. We dissolve the injunction against the county. In all other respects, we affirm the district-court judgment.

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Rendered in Part

Filed: May 8, 2003

20