Opinion issued August 11, 2005 














            


In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00436-CV
____________

WILCHESTER WEST CONCERNED HOMEOWNERS LDEF, INC.,
Appellant

V.

WILCHESTER WEST FUND, INC., WILCHESTER CLUB, AND
WILCHESTER OWNERS COMMITTEE, Appellees
 

 
 
On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2001-55866
 

 
 
OPINION ON MOTION FOR REHEARING
          We grant appellant’s motion for rehearing, withdraw our opinion dated June
17, 2004, and substitute this opinion in its place.
          In this suit for declaratory relief, which concerns a dispute between a group of
homeowners and the homeowners’ associations of two neighboring subdivisions,
appellant, Wilchester West Concerned Homeowners LDEF, Inc. (WWCH),
challenges the trial court’s rendition of summary judgment in favor of appellees,
Wilchester West Fund, Inc., Wilchester Club, and Wilchester Owners Committee, on
all of WWCH’s claims.
          WWCH is a non-profit organization of homeowners from the Wilchester West
subdivision, which is located in Harris County. The Wilchester West Fund, Inc.
(Wilchester West HOA) is the homeowners’ association for the Wilchester West
subdivision. The Wilchester Owners Committee (Wilchester HOA) is the
homeowners’ association for the neighboring Wilchester subdivision.


 The
Wilchester Club (the Club) is a separate, non-profit corporation that owns and
maintains recreational swimming and tennis facilities at two locations adjacent to the
two subdivisions.
          In three issues, WWCH argues that the trial court erred in granting the joint
motion for summary judgment filed by the Club and the homeowners’ associations
and in denying WWCH’s motion for summary judgment because (1) in the absence
of amendments to the homeowners’ deed restrictions, the homeowners’ associations
did not have the authority to enter into a contract with the Club to obtain use
privileges for all homeowners in exchange for an increase in the amount of the
homeowners’ annual assessments; (2) a petition circulated by the homeowners’
associations seeking approval from a majority of the homeowners to amend the
homeowners’ deed restrictions was insufficient because it contained “material non-disclosures or misrepresentations”; and (3) as a matter of law, the homeowners’
associations did not obtain authority to enter into a contract with the Club or to “force
all homeowners to join” the Club.
          We affirm.
Factual and Procedural Background
          In August 1999, the trustees of Wilchester HOA, Wilchester West HOA, and
the Club formed the “Wilchester Club Resolution Committee” (the Resolution
Committee) to study and to prepare recommendations concerning the financial future
of the Club and its relationship with the subdivisions. At that time, membership in
the Club was voluntary, and its members were required to pay an initiation fee and
annual membership dues in exchange for the privilege of using the Club’s facilities. 
The Resolution Committee subsequently prepared and circulated, to the homeowners
of both subdivisions, a letter and a “White Paper” setting forth its conclusion that the
Club was “not financially viable given its present membership base, the market
clearing price of neighborhood club memberships in West Houston, normal pool and
tennis facility operating costs, and the maintenance cost requirements for two
facilities that are approximately 35 years old.” The Resolution Committee
recommended that, to preserve the viability of the Club and to provide funds needed
to improve and to maintain its facilities, the homeowners’ associations vote either to
merge with the Club or to increase the homeowners’ annual assessments and to
segregate such funds for the use of the Club.
          The Resolution Committee’s recommendations were presented and discussed
at subsequent meetings of the Wilchester West HOA. At a special meeting of the
Wilchester West HOA in December 1999, a majority of the homeowners from that
subdivision, appearing in person or by proxy, voted against a proposal that would
have granted membership in the Club to all homeowners and would have increased
the homeowners’ annual assessment by $160, with such increase to have been
dedicated for the use of the Club.
          In March 2000, a majority of the homeowners of the Wilchester subdivision
voted by petition in favor of amending their deed restrictions to provide that each
homeowner, by virtue of his lot ownership, would become a voting member of the
Club and would pay a $160 increase in their annual homeowners’ assessment, with
such increase to be paid by the Wilchester HOA to the Club. That same month, the
board of trustees of the Wilchester West HOA circulated a letter proposing a similar
amendment to the deed restrictions for homeowners in the Wilchester West
subdivision. Petitions were circulated to the homeowners in the Wilchester West
subdivision, and a majority of the homeowners voted in favor of amending their deed
restrictions as proposed.
          In April 2000, representatives of the Club and of the homeowners’ associations
executed a “Use Agreement” memorializing the Club’s agreement to extend
membership to homeowners of both subdivisions in exchange for a $160 increase in
the homeowners’ annual assessments, to be paid by the homeowners’ associations to
the Club. The Club also agreed to amend its by-laws so that the Club’s board of
directors would be comprised of 10 homeowners, with five elected from each
subdivision. The Use Agreement, as well as the amended deed restrictions for both
subdivisions, were subsequently filed among the Harris County public property
records.
          In October 2001, WWCH sued the Club and the homeowners’ associations,
alleging that (1) the Wilchester West HOA had failed to comply with “the deed
restrictions and applicable law” in conducting the petition drive to amend the deed
restrictions, and (2) the Use Agreement reached between the homeowners’
associations and the Club violated the deed restrictions for homes within the
Wilchester West subdivision. In its petition, WWCH characterized the basis for its
suit as “a dispute about whether one group of homeowners can commence taxing their
neighbors—indefinitely, on pain of foreclosure—to subsidize a private pool club that
the neighbors do not want to join.” As enumerated in its petition, WWCH sought a
judgment from the trial court declaring that:
a.Wilchester West homeowners retain full authority to amend their
annual assessment by majority vote as provided in the deed
restrictions;
 
b.Wilchester West homeowners retain full authority to amend any
provision of their deed restrictions, or to eliminate their deed
restrictions entirely, by majority vote as provided in the deed
restrictions;
 
c.trustees of the [Wilchester West HOA] never obtained authority
to reduce homeowner powers specifically reserved in the deed
restrictions;
 
d.neither trustees of the [Wilchester West HOA] nor any group of
Wilchester West homeowners ever obtained authority to force
unwilling homeowners in Wilchester West to join [the Club], or
any organization except the [Wilchester West HOA]; and 
 
e.trustees of the [Wilchester West HOA] never obtained authority
to enter into the Use Agreement, and so the Use Agreement is
void.

WWCH also sought recovery of its attorney’s fees and costs. The homeowners’
associations and the Club answered WWCH’s lawsuit and generally denied its
allegations.
          WWCH subsequently filed a motion for summary judgment, based on the
claims in its lawsuit. In its motion, WWCH asserted that
[b]y this motion, [WWCH] seeks declaratory judgments that [Wilchester
West HOA] could not force homeowners to join the private club, and
could not adopt the Use Agreement. As an alternative basis for relief,
even if somehow [Wilchester West HOA] could make such an
agreement, this motion seeks declaratory judgments that [Wilchester
West HOA] did not properly obtain such authority.

          The homeowners’ associations and the Club responded to WWCH’s motion for
summary judgment and filed a joint motion for summary judgment, in which response
and motion they argued that the Wilchester West HOA (1) had the authority, under
the provisions of the applicable deed restrictions, to amend the deed restrictions by
agreement of a majority of the homeowners; (2) as a non-profit corporation, had the
authority to enter into a contract with an outside party such as the Club; and (3) made
sufficient disclosures to Wilchester West subdivision homeowners to inform them of
the purposes and effects of the amendments to the deed restrictions. The
homeowners’ associations and the Club also argued that the requested relief “would
significantly impact the property rights of every owner in both subdivisions” but that
the additional homeowners in the subdivisions had not been joined in the lawsuit.
          Without stating the basis for its rulings, the trial court denied WWCH’s motion
for summary judgment and granted the joint summary judgment motion filed by the
homeowners’ associations and the Club.  
Declaratory Judgment
          As noted above, WWCH sought declaratory relief from the trial court, as well
as attorney’s fees. However, in its petition, WWCH did not expressly identify its suit
as a declaratory judgment action brought under the Uniform Declaratory Judgments
Act. See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (Vernon 1997 & Supp.
2004–2005) (DJA). The DJA provides
A person interested under a deed, will, written contract, or other writings
constituting a contract or whose rights, status, or other legal relations are
affected by a statute, municipal ordinance, contract, or franchise may
have determined any question of construction or validity arising under
the instrument, statute, ordinance, contract, or franchise and obtain a
declaration of rights, status, or other legal relations thereunder.

Id. at § 37.004(a). The subjects enumerated by the DJA are not exclusive. Bonham
State Bank v. Beadle, 907 S.W.2d 465, 468 (Tex. 1995). Because the record indicates
that the nature of the relief sought by WWCH was declaratory,


 we treat WWCH’s
suit as having been brought within the provisions of the DJA.



Joinder of Affected Homeowners
          In their joint response to WWCH’s motion for summary judgment and in their
own joint motion for summary judgment, the homeowners’ associations and the Club
noted that the relief requested by appellant would “significantly impact the property
rights of every owner in both subdivisions” and that these homeowners had not been
made parties to the lawsuit. The homeowners’ associations and the Club assert that
summary judgment against WWCH on all of its claims was proper, in part, because
WWCH had failed to join all affected homeowners as parties to the suit.
          In our original opinion, we held that all other homeowners in the subdivisions
whose property rights and interest were directly at stake were “indispensable parties,”
and WWCH’s failure to join these parties deprived the trial court of subject matter
jurisdiction over WWCH’s declaratory judgment action. This holding was based on
section 37.006 of the DJA, which provides that “[w]hen declaratory relief is sought,
all persons who have or claim any interest that would be affected by the declaration
must be made parties.” Tex. Civ. Prac. & Rem. Code Ann. § 37.006 (Vernon 1997).
 In its motion for rehearing, WWCH argues that in light of two recent Texas Supreme
Court opinions, Simpson v. Afton Oaks Civic Club, 145 S.W.3d 169 (Tex. 2004) and
Brooks v. Northglen Ass’n, 141 S.W.3d 158 (Tex. 2004), the trial court had subject
matter jurisdiction over the dispute without joinder of all affected homeowners, and
thus we should adjudicate the dispute on the merits. 
          In Brooks, a homeowners’ association amended its subdivision’s deed
restrictions to expand the association’s board and to charge late fees on unpaid
assessments. 141 S.W.3d. at 161. A group of homeowners complained that the board
acted outside the bounds of the deed restrictions by adopting these amendments. Id. 
The association filed suit, seeking, in part, a declaration that its actions were valid. 
Id. The homeowners counterclaimed for a declaratory judgment that the association
had no authority to take the disputed actions. Id. The trial court granted the
association’s summary judgment on the merits, and the court of appeals affirmed in
part and reversed in part. Id. At the supreme court, the association argued for the
first time that the trial court lacked subject matter jurisdiction over the case because
the plaintiffs failed to join all affected homeowners as parties. Id. at 162.
          The supreme court rejected the association’s jurisdictional argument, noting 
that the DJA provided the trial court with jurisdiction to declare the rights, status, and
other legal relations for homeowners who were interested under a deed or written
contract. Id. (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 37.003(a), 37.004(a)
(Vernon 1997)). The court concluded that the question was not whether jurisdiction
was lacking, but rather “whether the trial court should have refused to enter a
judgment when a subset of the homeowners was not joined in the lawsuit.” Id.
(Emphasis added.).



          Similarly, in Simpson, a homeowner sought to enjoin a subdivision from
creating mandatory assessments and membership to a property owner’s association.
141 S.W.3d at 170. The court of appeals dismissed the case for lack of subject matter
jurisdiction because the plaintiff failed to join all property owners in his subdivision.
Id. The supreme court, citing its decision in Brooks, reversed and remanded the case
to the court of appeals. 
          Brooks provides the proper framework for the jurisdictional analysis in this
case. As stated in Brooks, rule 39 governs joinder of persons under the DJA and “like
the [DJA], mandates joinder of persons whose interests would be affected by the
judgment.” 141 S.W.3d at 162; see also Tex. R. Civ. P. 39; Tex. Civ. Prac. & Rem.
Code Ann. § 37.006. “Rule 39 determines whether a trial court has authority to
proceed without joining a person whose presence in the litigation is made mandatory
by the [DJA].” Brooks, 141 S.W.3d at 162. Rule 39(a) states:
A person who is subject to service of process shall be joined as a party
in the action if (1) in his absence complete relief cannot be accorded
among those already parties, or (2) he claims an interest relating to the
subject of the action and is so situated that the disposition of the action
in his absence may (i) as a practical matter impair or impede his ability
to protect that interest or (ii) leave any of the persons already parties
subject to a substantial risk of incurring double, multiple, or otherwise
inconsistent obligations by reason of his claimed interest.
 
Tex. R. Civ. P. 39(a).
          Rule 39(a)(1) “requires the presence of all persons who have an interest in the
litigation so that any relief awarded will effectively and completely adjudicate the
dispute.” Brooks, 141 S.W.3d at 162. Here, rule 39(a)(1) would not have precluded
the trial court from reaching the merits because nothing prevented the trial court from
rendering complete relief between the Wilchester West HOA and WWCH. Likewise,
rule 39(a)(2)(i) would not have precluded consideration of the merits because a
declaratory judgment does not prejudice the rights of any person that is not a party to
the proceeding, and any non-joined homeowner would be able to pursue individual
claims challenging the associations’ authority to take the disputed actions,
notwithstanding a ruling in this case. Id. at 163; see also Tex. Civ. Prac. & Rem.
Code Ann. § 37.006(a) (stating “[a] declaration does not prejudice the rights of a
person not a party to the proceeding.”). 
          We recognize that the Club and the homeowners’ associations may be subject
to the possibility of inconsistent judgments since not all of the homeowners in the
subdivision have been joined. However, as in Brooks, this possibility was caused by
their “own inaction.” Brooks, 141 S.W.3d at 163. The Club and the homeowners’
associations “could have sought relief at trial by urging the court, among other things,
to abate the case, join absent homeowners, or grant special exceptions.”


 See id.; see
also Truong v. City of Houston, 99 S.W.3d 204, 216 (Tex. App.—Houston [1st Dist.]
2002, no pet.) (stating “proper procedural tool used to raise an issue of a defect in
parties is a motion to abate” and finding that challenge to defect in parties contained
in summary judgment response was insufficient to preserve issue for review); Dahl
v. Hartman, 14 S.W.3d 434, 436 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)
(holding that trial court did not abuse its discretion in abating suit and ordering
joinder of all property owners because declaratory judgment action seeking
invalidation of deed restrictions would affect property interests of all owners).


 
          The Club and the homeowners’ associations argue that this case is
distinguishable from Brooks and Simpson because in those cases the associations
presented jurisdictional arguments for the first time on appeal. While it is true that
the Brooks court concluded that the association waived its complaint about the
absence of non-joined persons, Brooks also indicates that the failure to join all other
homeowners in the subdivision does not deprive the trial court of jurisdiction. 
Brooks, 141 S.W.3d at 162-63. In light of Brooks and Simpson, we must reject the
argument that a court does not have jurisdiction to hear a case similar to the one
presented here unless all property owners are joined. Instead, under Brooks, the Club
and the homeowners’ associations should have sought abatement or joinder to protect
their interests, and if the trial court denied such relief, then they should have sought
review of the trial court’s denial of their efforts to seek such relief. See id.              The Club and the homeowners’ associations also argue in their response to
WWCH’s motion for rehearing that WWCH is not an owner of property in Wilchester
or Wilchester West and that WWCH did not present any evidence of its authority to
represent owners in these subdivisions. We interpret this argument as a challenge to
WWCH’s organizational or associational standing. The Texas Supreme Court has set
forth a three-prong test to determine whether an organization has standing to bring
suit: (1) its members have standing to sue on their own behalf, (2) the interests the
organization seeks to protect are germane to the organization’s purpose, and
(3) neither the claim nor the relief requested requires the participation of individual
members in the lawsuit. Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440,
447–48 (Tex. 1993); Hays County v. Hays County Water Planning P’ship, 106
S.W.3d 349, 357 (Tex. App.—Austin 2003, no pet.). 
          As to the first prong, WWCH has alleged that its members have suffered an
injury as a result of the actions taken by the Wilchester West HOA, and thus its
members would be able to bring suit in their own right. See Hays County, 106
S.W.3d at 357 (finding individual members of community partnership who owned
property in area impacted by disputed transportation plan had standing to sue on their
own behalf). In satisfaction of the second prong, WWCH presented evidence that
it was formed by a group of homeowners to challenge the amendments to the deed
restrictions at issue in this case and the actions taken by Wilchester West HOA
pursuant to those amended restrictions. See id.; Save Our Springs Alliance, Inc. v.
Lowry, 934 S.W.2d 161, 163 (Tex. App.—Austin 1996, orig. proceeding [leave
denied]) (finding suit brought by alliance to protect water quality in a certain
geographic region reflected alliance’s expressed purpose). Specifically, in support
of its summary judgment motion, WWCH filed the affidavit of Bob Lemer, who
testified that he was a homeowner in Wilchester West and the president of WWCH
and that, in his capacity as president of WWCH, he represented 40 homeowners in the
Wilchester West subdivision. Lemer further stated that WWCH’s purpose was “to
challenge the Use Agreement and resulting Pool Tax . . . .” Finally, as to the third
prong, because WWCH sought declaratory relief, WWCH was not required to prove
the individual circumstances of its members to obtain relief as it reasonably could be
ascertained that any declaration provided would benefit the members of WWCH who
were injured. See Hays County, 106 S.W.3d at 357–58 (stating that it could be
reasonably ascertained that injunction would benefit members of community
partnership who were actually injured by disputed transportation plan) ; Anderson v.
New Prop. Owners’ Ass’n of Newport, Inc., 122 S.W.3d 378, 385 (Tex.
App.—Texarkana 2003, pet. denied) (stating “[w]hen, as here, an association seeks
declaratory or injunctive relief, it is reasonable to suppose that the relief sought will
inure to the benefit of the injured members.”). Thus, we hold that WWCH has
standing to bring this action and that we may adjudicate the dispute on the merits.


Amendment to Deed Restrictions
          In three issues, WWCH contends that the trial court erred in granting the
Clubs’ and the homeowners’ associations’ joint motion for summary judgment and
in denying its own summary judgment motion. In its first issue, WWCH argues that,
in the absence of the amendments to the homeowners’ deed restrictions, the
homeowners’ associations did not have authority to enter into the Use Agreement
with the Club. In its second issue, WWCH argues that the amendments to the deed
restriction were not effective because they failed for lack of notice and because the
petition circulated by the homeowners’ associations seeking approval of the
amendments contained material non-disclosures that rendered the amendments
invalid. In its third issue, WWCH challenges the association’s authority to enter into
the Use Agreement with the Club. 

          A party moving for summary judgment must conclusively prove all of the
elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c);
Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001);
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222–23 (Tex. 1999).


 When, as here,
both sides move for summary judgment, and the trial court grants one motion but
denies the other, a reviewing court should review both sides’ summary judgment
evidence, determine all questions presented, and render the judgment that the trial
court should have rendered. FM Props. Operating Co. v. City of Austin, 22 S.W.3d
868, 872 (Tex. 2000). When a summary judgment does not specify or state the
grounds on which the trial court relied, the non-movant on appeal must negate any
grounds on which the trial court could have relied, and we will affirm the summary
judgment on appeal if any of the grounds presented in the motion is meritorious. See
Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995); Mellon
Serv. Co. v. Touche Ross & Co., 17 S.W.3d 432, 435 (Tex. App.—Houston [1st Dist.]
2000, no pet.). In other words, a non-movant is required to show that each ground
alleged in the motion for summary judgment was insufficient to support summary
judgment. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 
 
          We begin our analysis by considering whether the amendments to the deed
restrictions are valid. In order to amend deed restrictions, three conditions must be
met. Dyegard Land P’ship v. Hoover, 39 S.W.3d 300, 313 (Tex. App.—Fort Worth
2001, no pet.); Hanchett v. E. Sunnyside Civic League, 696 S.W.2d 613, 615 (Tex.
App.—Houston [14th Dist.] 1985, writ ref’d n.r.e.). First, the instrument creating the
original restrictions must establish both the right to amend and the method of
amendment. Id. Second, the right to amend implies only those changes
contemplating a correction, improvement, or reformation of the agreement rather than
its complete destruction. Id. Third, the amendment must not be illegal or against
public policy. Id.
          The Texas Property Code provides that an extension, addition to or
modification of restrictions proposed by a property owners’ association may be
adopted by a number of methods, including “a method permitted by the existing
restrictions.” Tex. Prop. Code Ann. § 204.008(4) (Vernon Supp. 2004–2005).
          Paragraph 8.01 of Wilchester West’s restrictions states:
8.01. Term. These restrictions and covenants shall run with the land
and shall be binding upon all parties and all persons claiming under
them . . . unless at any time an instrument, executed by the then Owners
of a majority of the Lots within the Property, has been filed for record
agreeing to change these restrictions in whole or in part. (emphasis
added).
 
          A restrictive covenant should be liberally construed “to give effect to its
purposes and intent.” Tex. Prop. Code Ann. § 202.003(a) (Vernon 1995); Samms
v. Autumn Run Cmty. Improvement Ass’n, Inc., 23 S.W.3d 398, 402 (Tex.
App.—Houston [1st Dist.] 2000, pet. denied); Candlelight Hills Civic Ass’n, Inc. v.
Goodwin, 763 S.W.2d 474, 477 (Tex. App.—Houston [14th Dist.] 1988, writ denied). 
Restrictive covenants should be interpreted using the general rules of contract
construction, and words contained in restrictions should be given their commonly
accepted meanings. Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). 
Applying these rules, paragraph 8.01 unambiguously provides the homeowners in
Wilchester West with the right and the means to amend the restrictions by written
consent of a simple majority of the homeowners in Wilchester West filed of record. 
The summary judgment evidence establishes that this right was exercised by the
circulation of a petition to the homeowners in Wilchester West, that a majority of the
homeowners executed consents to the amendments to the restrictions, and that the
amendments and consents were filed of record.
          WWCH argues that the amendments are invalid for lack of notice. However,
there is no specific notice requirement contained in the restrictions. Rather, the
restrictions expressly permit an amendment by filing an instrument executed by the
majority of homeowners. When homeowners represented by WWCH purchased
homes in Wilchester West, they were on notice that the restrictions could be changed
through majority vote and that there were no specific notice requirements in order for
the restrictions to be amended. See Inwood N. Homeowners’ Ass’n v. Harris, 736
S.W.2d 632, 635 (Tex. 1987); Simms v. Lakewood Vill. Prop. Owners Ass’n, Inc., 895
S.W.2d 779, 788 (Tex. App.—Corpus Christi 1995, no writ). Because the restrictions
do not contain any specific notice requirement of a proposed amendment to the
restrictions, WWCH’s notice argument fails. 
          WWCH also argues that the amendments are invalid because the petition
circulated by the Wilchester West HOA seeking approval of the amendments
contained material non-disclosures.


 However, the petition circulated to the
homeowners of Wilchester West expressly set forth the proposed amendments to the
restrictions. For example, the petition specifically stated that the restrictions would
be amended to provide that (1) one of the “purposes” of the Wilchester West HOA
would be the “payment of an Annual Member Fee” to the Club; (2) a portion of the
annual maintenance charge would be used for payment of annual fees to the Club on
behalf of all homeowners; (3) such payment would be “mandatory by virtue of the
agreement” between the Club and the association; and (4) annual maintenance
charges would be increased by $160.00. 
          The trustees of the Wilchester West HOA also stated in a cover letter
accompanying the petition circulated to the Wilchester West homeowners that if the
petition was approved by the homeowners, the homeowners would increase their
annual maintenance charge by $160.00 and the Wilchester West HOA would enter
into a “contract” with the Club whereby the association would be obligated to pay
annual fees to the Club on behalf of each member of the association. Thus, the
petition provided the Wilchester West homeowners with the opportunity to review
the exact language of the proposed amendments, and there is no evidence that the
petition contained material non-disclosures or misrepresentations concerning the
language of the amendments themselves. 
          Because we conclude that the proper procedures were invoked to amend the
restrictions, we now consider whether the substance of the amended restrictions and
the actions taken by the Wilchester West HOA pursuant to those amendments were
lawful. Deed restrictions governing residential property are “generally enforceable
when their language is clear, they are confined to a lawful purpose, and they are
written within reasonable bounds.” Samms, 23 S.W.3d at 402 (citing Gunnels v. N.
Woodland Hills Cmty. Ass’n, 563 S.W.2d 334, 338 (Tex. App.—Houston [1st Dist.]
1978, no writ)). Under the Texas Property Code, “[a]n exercise of discretionary
authority by a property’s owner’s association concerning a restrictive covenant is
presumed reasonable unless the court determines by a preponderance of the evidence”
that such exercise was “arbitrary, capricious or discriminatory.” Tex. Prop. Code
Ann. § 202.004 (Vernon 1995).
          WWCH asserts that the amendments are illegal and against public policy.
WWCH further asserts that the association’s entry into the Use Agreement was
“arbitrary, capricious and unreasonable.” However, in Candelight Hills Civic Ass’n,
our sister court found that an association’s purchase of a neighborhood recreational
facility with the association’s maintenance fund was neither unreasonable nor
prohibited by law. 763 S.W.2d at 480. Similarly, in this case, we find nothing in the
amendments to be illegal or against public policy. Nor do we find the associations’
decision to enter into the Use Agreement with the Club to be arbitrary, capricious or
discriminatory. 
          The association’s decision to enter into the Use Agreement is supported by
both the pre-amended and amended restrictions. The pre-amended restrictions stated
that maintenance charges should be used “to promote the health, safety, welfare, and
common benefit of the residents” and for “other things necessary or desirable, in the
opinion of the Corporation, to maintain or improve the Property or which is
considered of benefit to the Owners.” (Emphasis added.) The amended restrictions
retained this broad language, generally permitting the association to use the
maintenance fees for purposes benefitting the owners, but also specifically authorized
the use of maintenance charges for payment of annual fees to the Club. Construing
these restrictions liberally, as we are required to do, we hold that it was well within
Wilchester West HOA’s discretion to enter into the Use Agreement to mandate
membership in and financial support of neighborhood recreational facilities.
          Our holding that the Wilchester West HOA was authorized to enter into the
Use Agreement with the Club is also supported by relevant provisions of the Texas
Non-Profit Corporation Act and the Property Code. The Non-Profit Corporation Act
grants a corporation the power to, among other things, “make contracts and incur
liabilities,” and “have and exercise all powers necessary or appropriate to effect any
or all of the purposes for which the corporation is organized.” Tex. Rev. Civ. Stat.
Ann. art. 1396-2.02(A)(8), (15) (Vernon Supp. 2004–2005). Furthermore, the
Property Code states that an association is entitled to, among other things, “make
contracts and incur liabilities relating to the operation of the subdivision and the
property owners’ association.” Tex. Prop. Code Ann. § 204.010(5) (Vernon Supp.
2004–2005). Here, after the restrictions were amended in accordance with the
required procedures, the Wilchester West HOA entered into the Use Agreement. 
Wilchester West, an incorporated property owners’ association operating with all the
general rights and benefits of a such an entity was empowered to enter into this
agreement pursuant to the deed restrictions and the relevant provisions of the
Property Code and Non-Profit Corporation Act.
          In support of their argument that the Wilchester West HOA’s decision to enter
into the Use Agreement was arbitrary, capricious, and discriminatory, WWCH points
to specific terms of the Use Agreement and also complains that powers granted to the
Wilchester West HOA and the Club are completely unrestricted. In regard to the
specific terms of the Use Agreement, WWCH complains about the amount of the
increased assessment, the duration of the Use Agreement, and the termination
provisions contained in the Use Agreement. However, the amount of the increased
assessment was disclosed to the Wilchester West homeowners before a majority of
the homeowners voted to amend the restrictions. Additionally, Wilchester West
HOA’s entry into a long-term contract with restrictive termination provisions is
compatible with the goals of the amendments, including long-term and continued
operation of the Club and improvement of the Club’s facilities.


 WWCH argues that,
absent disclosure of the specific termination clause, homeowners were entitled to
assume that Wilchester West would only enter into an agreement with the Club that
was terminable at the will of a simple majority of homeowners. However, there is no
contractual or other legal basis for this assertion. Furthermore, accepting WWCH’s
assertion would restrict Wilchester West HOA and other homeowners’ associations
to entering into contracts that are terminable at will by a simple majority of their
homeowner members. 
          In regard to the alleged unconditional nature of the Use Agreement, WWCH
complains that there are no provisions regulating the Club’s expenditure of fees
generated from the residents of Wilchester West and that the Club has no obligation
to act in the interest of the residents of Wilchester West. WWCH notes that since the
Use Agreement imposes no conditions on the Club’s expenditures, the Club could
open locations far from Wilchester West, stockpile fees paid by residents of
Wilchester West, or build an “overly luxurious” club house. However, the Use
Agreement contains several limiting provisions. For example, the Use Agreement
provides that the annual membership fee of $160.00 may not be increased without the
prior written approval of Wilchester West HOA’s trustees, who are elected by
residents of Wilchester West. The Use Agreement also requires that the board of
directors of the Club, who would be involved in making decisions related to the
expenditure of fees generated from the residents of Wilchester West, consist of
homeowners in the Wilchester and Wilchester West subdivisions. Additionally, as
discussed above, the restrictions themselves contain several limitations on the
discretionary authority of the Wilchester West HOA and require that annual
maintenance fees be used to promote the common benefit of the homeowners. 
Moreover, we note that the directors of the Wilchester West HOA are required, by
law, to discharge their duties in good faith and in the best interest of the association. 
See Tex. Rev. Civ. Stat. Ann. art. 1396-2.28 (Vernon 2003). While it is clear that
at least some residents of Wilchester West do not wish to pay a portion of their annual
maintenance fees to support the neighborhood recreational facilities operated by the
Club, Wilchester West HOA was authorized to enter into the Use Agreement pursuant
to the deed restrictions approved by a majority of homeowners in Wilchester West,
and we do not find Wilchester West HOA’s decision to enter into the Use Agreement
to be arbitrary, capricious or discriminatory. 
          Because the amended deed restrictions are valid and are not illegal or against
public policy and because the Wilchester West HOA did not exercise its discretionary
authority under these restrictions in an arbitrary, capricious or discriminatory manner,
we overrule all three issues presented by WWCH.


 Accordingly, we hold that the
trial court did not err in denying WWCH’s motion for summary judgment and in
rendering summary judgment in favor of the appellees on WWCH’s action for
declaratory judgment. 
Conclusion
          We affirm the judgment of the trial court.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.