**In re E.I. DU PONT DE NEMOURS AND COMPANY, Relator.**

No. 01–0066.

Supreme Court of Texas.

Argued Dec. 5, 2001.

Decided Dec. 5, 2002.

Mike A. Hatchell, Hatchell P.C., Gregory D. Smith, Maria Benecki Sowders, Ramey & Flock, Tyler, Larry E. Cotten, Dennis M. Conrad, Susan Jan Hueber, Kirkley Schmidt & Cotten LLP, Fort Worth, M.C. Carrington, Sandra French Clark, Mehaffy & Weber, Beaumont, for Relator.

Glen W. Morgan, Richard J. Clarkson, Reaud Morgan & Quinn, Beaumont, William V. Dorsaneo, III, Gibson Dunn & Crutcher LLP, Dallas, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice HANKINSON, Justice O'NEILL, Justice JEFFERSON, and Justice SCHNEIDER joined.

Some 8,000 plaintiffs in five related cases pending in two trial courts in Orange County and Jefferson County have sued relator and more than 80 other defendants for damages from exposure to asbestos. Relator moved to dismiss the plaintiffs' claims against it under section 71.052 of the Texas Civil Practice and Remedies Code on the ground that the claims were commenced after August 1, 1995, and arose outside Texas at a time when plaintiffs were not residents of this State. The trial courts denied the motions, and relator seeks review by mandamus in this consolidated original proceeding. We conditionally grant relief.

## I

We have before today stated that section 71.052 was enacted in 1997 as part of a legislative package aimed at reducing the crowding of Texas courts with "claims arising out of state and claims brought by foreign plaintiffs, ... having little or no connection to Texas, at the expense of Texas residents." [1] As pertinent to the present proceeding, the statute provides:

(a) This section applies only to a claim for personal injury or wrongful death in which:

(1) the plaintiff was not a resident of this state at the time the claim arose;

(2) the plaintiff's claim arose outside this state; and

(3) the plaintiff's claim alleges that harm was caused by exposure to asbestos fibers.

\* \* \*

(c) The court, on motion of a defendant, shall dismiss each claim against the defendant that is subject to this section and was commenced in this state on or after August 1, 1995, but before January 1, 1997, unless the plaintiff files a written statement electing to:

(1) abate the plaintiff's claim against the defendant for a period of 180 days from the date the court disposes of the defendant's motion, to afford the plaintiff an opportunity to

---

1. *Owens Corning v. Carter,* 997 S.W.2d 560, 565–566 (Tex.1999).

file a new action on the claims in another state of the United States; or

(2) retain the plaintiff's claims against the defendant in this state and limit the plaintiff's recovery on the claims for exemplary damages, if any, against the defendant to an amount not to exceed the greater of:

(A) two times the amount of economic damages plus an amount equal to any noneconomic damages found by the trier of fact, not to exceed $750,000; or

(B) $200,000.

\* \* \*

(e) A court may not abate or dismiss a claim under Subsection (c) against a defendant until the defendant files with the court or with the clerk of the court a written stipulation that, with respect to a new action on the claim commenced by the plaintiff, the defendant waives the right to assert a statute of limitations defense in all other states of the United States in which the claim was not barred by limitations at the time the claim was filed in this state as necessary to effect a tolling of the limitations periods in those states beginning on the date the claim was filed in this state and ending on the date the claim is dismissed or the period of abatement ends.

(f) The court may not abate or dismiss a claim under this section against a defendant until the defendant files with the court or with the clerk of the court a written stipulation that, with respect to a new action on the claim commenced by

the plaintiff in another state of the United States, the plaintiff may elect that the plaintiff and the defendant may:

(1) rely on responses to discovery already provided under the Texas Rules of Civil Procedure, plus any additional discovery that may be conducted under the rules of civil procedure in the other state; or

(2) use responses to discovery already provided and conduct additional discovery as permitted under the rules of civil procedure in the other state.

(g) To comply with this section in relation to an action that involves both claims that arose in this state and claims that arose outside this state, a court shall consider each claim individually and shall sever from the action the claims that are subject to this section.

(h) A court shall determine that a claim arose in the jurisdiction in which the plaintiff was located at the time the plaintiff is alleged to have been exposed to asbestos fibers. If a plaintiff alleges that the plaintiff was exposed to asbestos fibers while located in more than one jurisdiction, the court shall determine, for purposes of this section, which of the jurisdictions is the most appropriate forum for the claim, considering the relative amounts and lengths of the plaintiff's exposure to asbestos fibers in each of the jurisdictions.[2]

The statute "applies to a civil action that is pending on the effective date" of the Act, which was May 29, 1997, unless "a trial of a plaintiff's action" had already begun.[3]

---

2. TEX. CIV. PRAC. & REM.CODE § 71.052(a), (c), (e)-(h).

3. Act of May 27, 1997, 75th Leg., R.S., ch. 424, § 4(b), 1997 Tex. Gen. Laws 1680, 1683–1684 ("Section 2 of this Act [adopting section 71.052] applies to a civil action that is pending on the effective date of this Act in which

the plaintiff alleges that harm was caused by exposure to asbestos fibers. In an action commenced before the effective date of this Act, a trial of a plaintiff's action that was completed before that date, or that is in progress on that date, and a subsequent new trial or retrial of that plaintiff's action are gov-

Four of the five related cases underlying the present proceeding were filed before May 29, 1997, and were pending on that date—three in Orange County on behalf of a total of about 4,300 plaintiffs [4] and one in Jefferson County on behalf of about 4,000 plaintiffs.[5] None of the four cases had yet gone to trial, but a few of the plaintiffs had been severed out of one of the Orange County cases into a separate action that had been tried in January 1997 and was awaiting judgment.[6] Since then there have been at least two other trials in severed cases involving a few plaintiffs, as well as a number of settlements.

Relator, E.I. du Pont de Nemours and Co., has not been involved in any of the trials or settlements. DuPont was not originally named as a defendant in any of the four cases and was first added by amended pleadings filed in all of them on September 10, 1996, a little more than eight months before section 71.052 was enacted.[7] DuPont immediately filed special appearances in the cases, which the trial courts denied, and moved to dismiss the claims against it based on *forum non conveniens*, which the trial courts also denied. DuPont took an interlocutory appeal from the rulings on the special appearances.[8] The court of appeals affirmed in February 1999,[9] and we dismissed Du-

Pont's petition for review for want of jurisdiction in January 2000.[10]

In August 2000 the fifth case involved in the present proceeding was severed from the three cases in Orange County.[11] A few days later, DuPont moved in each of the five cases to dismiss the plaintiffs' claims against it under section 71.052(c) if plaintiffs did not elect between a cap on exemplary damages or a 180-day abatement to allow for refiling in another state. DuPont asserted that section 71.052(c) was applicable (1) because the claims against it were "commenced in this state on or after August 1, 1995, but before January 1, 1997," since it was not named as a defendant in the litigation until September 10, 1996, and (2) because discovery in the cases showed that all but eighteen plaintiffs in the four Orange County cases and sixteen in the Jefferson County case had no contact at all with Texas. For those thirty-four plaintiffs who had indicated some contact with Texas, DuPont argued under section 71.052(h) that Texas was not "the most appropriate forum for the claim[s], considering the relative amounts and lengths of the plaintiff[s'] exposure to asbestos in each of the jurisdictions." Alternatively, DuPont argued that any of the thirty-four plaintiffs for whom this was not true

---

erned with respect to the subject matter of Section 2 of this Act by the applicable law in effect immediately before that date, and that law is continued in effect for that purpose.").

4. *Abernathy v. A.C. & S., Inc.*, No. A–920,967–C (128th Dist. Ct., Orange County, Tex.); *Bailey v. A.C. & S., Inc.*, No. A–920,961–C (128th Dist. Ct., Orange County, Tex.); *Cardwell v. A.C. & S., Inc.*, No. A–930,553–C (128th Dist. Ct., Orange County, Tex.).

5. *Martin v. A.C. & S., Inc.*, No. B–150,896 (60th Dist. Ct., Jefferson County, Tex.).

6. *Cole v. Owens–Corning Fiberglas Corp.*, No. A 920,961–S (128th Dist. Ct., Orange County, Tex.).

7. The tenth amended petition in *Abernathy*, the eighth amended petition in *Bailey*, the eighth amended petition in *Cardwell*, and the eighteenth amended petition in *Martin*.

8. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(7).

9. *E.I. DuPont de Nemours & Co. v. Bailey*, 986 S.W.2d 82 (Tex.App.-Beaumont 1999, pet. dism'd w.o.j.).

10. 43 Tex. Sup.Ct. J. 337 (Jan. 27, 2000).

11. *Parsons v. Owens Corning*, No. A–920,961–SC(11) (128th Dist. Ct., Orange County, Tex.) (order of severance dated August 18, 2000).

should be severed from the actions under section 71.052(g). DuPont stipulated, as required by sections 71.052(e) and (f), that limitations on any plaintiff's claim in another state would be tolled for the time the Texas case in which he was involved had been pending, and that plaintiffs could elect to use discovery in the Texas cases in any new actions they filed in other states. In response to DuPont's motions, the plaintiffs did not contest the extent of their Texas connections or the adequacy of DuPont's stipulations under the statute. They argued only that section 71.052(c) does not apply because the actions were filed before August 1, 1995, even though DuPont was not named as a defendant until later. Because they argued that the statute was inapplicable, the plaintiffs did not make the election called for under section 71.052(c).

The trial court in Orange County denied the motions to dismiss in its cases by four orders dated July 5, 2000, and the trial court in Jefferson County denied the motion in its case by order dated November 17, 2000. On December 4, 2000, DuPont petitioned the court of appeals for relief from all five orders by mandamus, which that court denied by unpublished order on December 28, 2000.[12] DuPont filed a consolidated petition for mandamus in this Court on January 24, 2001.[13]

## II

▌ To obtain mandamus relief, DuPont must first show that the trial courts clearly abused their discretion by denying DuPont's motions to dismiss.[14] Since the provisions of section 71.052 are mandatory,

the trial courts had no discretion to refuse to follow them if they apply. DuPont asserts that it has satisfied subsections (a) and (h)—more specifically, that it has shown for almost all of the plaintiffs whose only contact with Texas has been filing suit here, that their claims arose outside Texas when they were not Texas residents, and for the thirty-four plaintiffs with any Texas contacts at all, that their exposure to asbestos occurred so much outside Texas that Texas is not the most appropriate forum for their claims. The plaintiffs did not contest this assertion in the trial court and do not do so here—not even the thirty-four plaintiffs with minimal Texas contacts. Rather, the plaintiffs argue that their claims against DuPont were not "commenced in this state on or after August 1, 1995, but before January 1, 1997," within the meaning section 71.052(c), because even though DuPont was not named as a defendant until September 10, 1996, their claims against DuPont relate back to when their lawsuits against other defendants were first filed, which was before August 1, 1995. The plaintiffs also argue that section 71.052 is inapplicable because trial began in a severed action before the statute's effective date. Both of these arguments turn on a proper construction of the statute, which is a legal issue on which the trial courts' views are not entitled to deference.[15]

▌ In response to the plaintiffs' relation-back argument, DuPont points out that section 71.052 distinguishes "claims" from "actions". The statute thrice refers to an "action on the claim[s]"[16] and once

12. *In re E.I. du Pont de Nemours & Co.,* No. 09–00–539–CV (Tex.App.-Beaumont, Dec. 28, 2000, orig.proceeding) (not designated for publication).

13. 44 Tex. Sup.Ct. J. 349 (Jan. 24, 2001).

14. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992).

15. *Id.* at 840.

16. Tex. Civ. Prac. & Rem.Code § 71.052(c)(1) ("to afford the plaintiff an opportunity to file a new action on the claims in another state"),

speaks of an action "involv[ing]" claims.[17] The statute speaks separately of the commencement of a claim[18] and the commencement of an action on a claim.[19] Thus, DuPont argues, the plaintiffs' "claims" against it cannot be said to have commenced when the plaintiffs' "actions" were first filed. But even apart from the distinctions section 71.052 seems to draw between the two words, nothing in the statute indicates that a claim against a defendant would relate back to an earlier time when a claim was made or action filed against another defendant. Certainly there would be no such relation back for purposes of applying a statute of limitations absent a showing that the later-named defendant had simply been misnamed and was actually aware of the plaintiffs' allegations and had not been misled or prejudiced.[20] We see no reason to allow for a broader relation back under section 71.052. On the contrary, to accept the plaintiffs' argument would be to impair the purpose of the statute, which is to reduce asbestos claims by nonresidents. We therefore conclude that the plaintiffs' claims against DuPont commenced, within the meaning of section 71.052(c), when DuPont was first named as a party on September 10, 1996.

■■■ We also disagree with the plaintiffs that trial began before May 29, 1997, in any of the five actions involved in the present proceeding simply because a few of the plaintiffs in one of those actions had been severed into a separate action that went to trial before that date. A severed action becomes a different action.[21] DuPont does not argue that section 71.052 applies to the severed action, in which the plaintiffs tell us final judgment has not yet been rendered. The statute plainly applies to the other actions, in which there have been no trials.

Accordingly, we conclude that the trial courts clearly abused their discretion in refusing to apply section 71.052 to the plaintiffs' claims against DuPont in the five underlying cases.

## III

■■■ To obtain mandamus relief, DuPont must also show that it has no adequate remedy by appeal from the trial courts' rulings.[22] DuPont argues that if it is not dismissed as a party in the underlying lawsuits involving more than 8,000 plaintiffs, it will likely be many years before the trial courts' refusal to apply section 71.052 can be appealed. Thus, Du-

§ 71.052(e) ("with respect to a new action on the claim commenced by the plaintiff"), and § 71.052(f) (same).

**17.** *Id.* § 71.052(g) ("an action that involves both claims that arose in this state and claims that arose outside this state").

**18.** *Id.* § 71.052(c) ("The court ... shall dismiss each claim ... that is subject to this section and was commenced in this state on or after August 1, 1995, but before January 1, 1997").

**19.** *Id.* § 71.052(e) and (f) ("a new action on the claim commenced by the plaintiff").

**20.** *See Chilkewitz v. Hyson,* 22 S.W.3d 825, 828, 830 (Tex.1999); *Enserch Corp. v. Parker,* 794 S.W.2d 2, 4–5 (Tex.1990); *see generally*

C.T. Drechsler, Annotation, *Change in Party After Statute of Limitations Has Run,* 8 A.L.R.2d 6, 112 (1949) (with supplemental citations).

**21.** *Martinez v. Humble Sand & Gravel, Inc.,* 875 S.W.2d 311, 312–313 (Tex.1994) (per curiam); *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 383 (Tex.1985) ("a severance splits a single suit into two or more independent actions") (citing *Hall v. City of Austin,* 450 S.W.2d 836, 837–838 (Tex. 1970)(per curiam)).

**22.** *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

Pont argues, its situation is analogous to that of the defendant in *CSR Ltd. v. Link*, another asbestos-exposure case, in which we granted mandamus relief to direct that the defendant's special appearance be sustained.[23] In *CSR*, we said that while appeal is an adequate remedy for the improper denial of a special appearance in many cases, that is not so in "[m]ass tort litigation [which] places significant strain on a defendant's resources and creates considerable pressure to settle the case, regardless of the underlying merits."[24] Although only five plaintiffs had sued the defendant, we noted that there were "thousands of potential claimants".[25] Given the burden of these claims not only on the defendant but also on the State's judicial resources, we concluded that "[b]ecause of the size and complexity of the asbestos litigation, the most prudent use of judicial resources in this case is to permit a preliminary resolution of the fundamental issue of personal jurisdiction by writ of mandamus."[26]

We agree with DuPont that the present case is like CSR. While the defendant in CSR faced thousands of *potential* claimants, DuPont has already been sued in the underlying cases by over 8,000 plaintiffs. The litigation has been pending for more than eight years, and DuPont has been a party for more than six years. No end is in sight. The record reflects that the trial courts intend to try one group of plaintiffs at a time until the cases can be resolved. The burden of this litigation—on DuPont and on judicial resources—is no lighter than the burden of the litigation in CSR.

The plaintiffs argue that we should infer from the Legislature's failure to provide for interlocutory appeals from orders issued under section 71.052 an intent that there be no review by mandamus, especially since the Legislature provided for an interlocutory appeal from the denial of a special appearance in the same session in which it enacted section 71.052.[27] The plaintiffs cite no authority for this argument, and the inference is not one we can logically draw. It is just as reasonable to infer that the Legislature intended that orders under section 71.052 be subject to the same rules regarding mandamus review as any other interlocutory orders.

For the same reasons stated in *CSR*, we conclude that DuPont has no adequate remedy by appeal from the orders denying its motions to dismiss.

## IV

The plaintiffs argue that even if DuPont has met the requirements for mandamus relief, such relief should not issue for various equitable reasons, chief among them that DuPont unreasonably delayed moving for dismissal under section 71.052 until June 2000. The plaintiffs complain that from October 1996, a few weeks after DuPont was served, until January 2000, DuPont sought to have its special appearances in the cases sustained, and having lost that battle, it should not be allowed to shift tactics to move for dismissal under section 71.052. The plaintiffs argue that by asserting special appearances and conducting limited discovery DuPont waived any relief under section 71.052. The plaintiffs have failed to show how the delay has prejudiced them in any way. Even if they had made such a showing, the plaintiffs cite nothing to indicate that the

23. 925 S.W.2d 591, 597 (Tex.1996).

24. *Id.* at 596 (citation omitted).

25. *Id.*

26. *Id.* at 597.

27. Act of May 27, 1997, 75th Leg., R.S., ch. 1296, § 1, 1997 Tex. Gen. Laws 4936, 4937.

Legislature intended for a defendant to elect between a special appearance and a motion to dismiss under section 71.052. Absent any such legislative intention, we cannot conclude that a party must exercise its rights under section 71.052 when to do so would compromise its assertion that the trial court lacked personal jurisdiction over it.

■ The plaintiffs argue that DuPont should not be allowed to move to dismiss under section 71.052 when other defendants in the cases have not done so. The statute plainly states "a defendant" may move to dismiss,[28] and the Legislature was certainly well aware of the large numbers of parties often involved in asbestos cases. The plaintiffs argue that DuPont has done business as a manufacturer of asbestos products in Texas and throughout the United States. But while the extent of DuPont's business in Texas is relevant to its special appearances, it is not relevant under section 71.052, which focuses instead on a plaintiff's residence and place of injury. The plaintiffs argue that fact questions about when and where the plaintiffs' claims arose preclude mandamus relief. But the plaintiffs do not contest that almost all of them have never had any contact with Texas at all, nor do they assert that for the thirty-four who have had minimal contact with Texas, this State is the appropriate forum under section 71.052(h) for prosecution of their claims. No other fact questions regarding the plaintiffs' claims are relevant to the statute. Finally, the plaintiffs complain that the mandamus record does not contain all of their pleadings. The plaintiffs have failed to explain, however, the relevance of any omitted pleading.

In sum, we reject the plaintiffs' arguments that mandamus relief to which Du-Pont would otherwise be entitled is precluded by equitable considerations.

## V

We come finally to the relief to be ordered. In response to DuPont's motions to dismiss, the plaintiffs, as we have said, took the position that section 71.052 was inapplicable, and therefore they did not file the election required by section 71.052(c) or seek severance of any claims for which Texas is the most appropriate forum. Du-Pont argues that if, as we hold, section 71.052 applies, then the plaintiffs can no longer make the election allowed by section 71.052(c) or otherwise resist DuPont's motions, and all of the claims against Du-Pont must be dismissed. We disagree. Although we have not been persuaded by the plaintiffs' arguments that section 71.052 is inapplicable, they should not be punished for having made them by being denied the opportunity to make the election offered by the statute.

Accordingly, we conditionally grant Du-Pont's consolidated petition for mandamus. The 128th District Court is directed to vacate its orders dated July 5, 2000, denying DuPont's motions to dismiss in Cause Nos. A–920,967–C, A–920,961–C, A–930,-553–C, and A–920,961–SC(11) immediately. The 60th District Court is directed to vacate its order dated November 17, 2000, denying DuPont's motion to dismiss in Cause No. B–150,896 immediately. The plaintiffs may promptly file a written election under section 71.052(c) and move to sever any of the thirty-four plaintiffs identified in DuPont's motions whose claims should be severed under section 71.052(g)-(h). If the plaintiffs fail to do so, the respective courts are directed to grant Du-Pont's motions forthwith. We are confident that both courts will comply with this

---

**28.** Tex. Civ. Prac. & Rem.Code § 71.052(c).

procedure. Our writ will issue only if they do not.

Justice SMITH did not participate in the decision.