**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed August 10, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00851-CV

---

## IN RE S.D, Relator

---

ORIGINAL PROCEEDING
WRIT OF MANDAMUS
310th District Court
Harris County, Texas
Trial Court Cause No. 2012-69240

---

## MEMORANDUM OPINION

On December 22, 2020, Mother filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, Mother asks this court to compel the Honorable Sonya Heath, presiding judge of the 310th District Court of Harris County, to vacate her November 23, 2020 temporary orders. We grant the requested relief.

## BACKGROUND

The child, who has Down Syndrome and is a special-needs child, was born in 2008. The child was enrolled in the Arbor School, which is a school for special-needs children, when he was six months old. About six months later, Father's mother ("Grandmother") moved into Mother and Father's home to help care for the child. After Mother and Father separated in 2012, Grandmother continued to live with Father and the child. Mother and Father were appointed joint managing conservators of the child when they divorced on March 13, 2013. Father had the exclusive right to designate the primary residence of the child, and Mother had a standard possession order.

On August 14, 2017, Mother and Father entered into a mediated settlement agreement, under which they agreed to remain joint managing conservators, for Father to continue to have the exclusive right to designate the child's primary residence, to modify Mother's child-support payments, and for Father to have judgment on child-support arrearages. On September 26, 2017, the trial court signed two orders: (1) an order in a suit to modify the parent-child relationship; and (2) an agreed child-support review order. Both orders were consistent with the terms of the mediated settlement agreement.

Father died on December 22, 2019. Grandmother told Mother about Father's death on December 27, 2019, which was during Father's period of possession. Mother picked up the child from Grandmother the next day, on December 28, 2019. Mother was already planning to pick up the child that day because it was her Christmas visitation pursuant to the standard possession order. The child started living with Mother at that point. In January 2020, Mother removed the child from

the Arbor School and enrolled the child in an elementary school close to where she lived.

On January 9, 2020, Grandmother filed a petition to modify the parent-child relationship or, alternatively, a petition for grandparent possession or access.[1] Grandmother sought to modify the March 13, 2013 final decree of divorce, the September 26, 2017 order in a suit to modify the parent-child relationship, and the September 26, 2017 agreed child support review order. Grandmother requested that she be appointed the person with the exclusive right to designate the primary residence of the child and that Mother be given a standard possession order. Alternatively, Grandmother requested that the trial court grant her possession and access to the child. Grandmother also requested emergency temporary orders, appointing her and Mother temporary joint managing conservators with Grandmother having the exclusive right to designate the primary residence of the child. Grandmother requested a temporary restraining order prohibiting Mother from, among other things, removing the child from the Arbor School.

On February 13, 2020, the trial court held a hearing and orally announced that the child would remain in the elementary school, in which Mother had enrolled him, and Grandmother would have expanded possession. The trial court signed "Bandaid Temporary Orders" on April 16, 2020.

---

[1] Grandmother asserted standing under Family Code section 102.003(a)(9), which permits an original suit to be filed by "a person other than a foster parent, who has had actual care, control, and possession of child for at least six months ending not more than 90 days preceding the date of the filing of the petition[.]" Tex. Fam. Code Ann. § 102.003(a)(9). Grandmother also asserted standing under section 156.002(b), which provides that "[a] person or entity who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction." Tex. Fam. Code Ann. § 156.002(b).

The trial court held an evidentiary hearing on temporary orders on September 2, 2020, and October 12, 2020. At the conclusion of the hearing, the trial court found that "it's in the best interest of the child to stay with mom and for grandma to have visitation" and appointed Mother sole managing conservator and Grandmother possessory conservator. Mother objected to the entry of the temporary orders and moved for reconsideration of those orders. The trial court, on November 23, 2020, signed the temporary orders appointing Mother temporary sole managing conservator with the exclusive right to designate the primary residence of the child and appointing Grandmother nonparent temporary possessory conservator with a standard possession order.

In this mandamus proceeding, Mother claims that the trial court abused its discretion by appointing Grandmother temporary possessory conservator over Mother's objection as a fit parent.[2]

**STANDARD OF REVIEW**

Ordinarily, to be entitled to a writ of mandamus, a relator must show that the trial court clearly abused its discretion, and that the relator lacks an adequate remedy by appeal. *In re Turner*, 591 S.W.3d 121, 124 (Tex. 2019) (orig. proceeding). In determining whether the trial court clearly abused its discretion, an appellate court may not substitute its judgment for the trial court's determination of factual or other

---

[2] Mother also moved to dismiss Grandmother's petition to modify the parent-child relationship based on Grandmother's alleged lack of standing, which the trial court denied on September 21, 2020. Mother further filed a motion for no-evidence summary judgment the grounds that Grandmother lacked standing and failed to rebut the fit-parent presumption. The trial court denied the motion for summary judgment on December 18, 2020. The issue of Grandmother's standing is not before this court.

4

matters committed to the trial court's discretion, even if the court would have decided the issue differently. *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). With respect to questions of law, a trial court has no discretion in determining what the law is or applying the law to the facts. *In re Geomet Recycling LLC*, 578 S.W.3d 82, 91 (Tex. 2019) (orig. proceeding). We cannot set aside the trial court's findings as arbitrary and unreasonable unless the trial court could reasonably have reached only one decision. *In re RSR Corp.*, 568 S.W.3d 663, 665 (Tex. 2019) (orig. proceeding) (per curiam). Temporary orders are not subject to interlocutory appeal. *See* Tex. Fam. Code Ann. § 6.507. Therefore, the November 23, 2020 temporary orders at issue in this proceeding are subject to mandamus review. *See In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (orig. proceeding).

## I.   Laches Does Not Bar Mother's Request for Relief

Grandmother contends that Mother's request for relief is barred by laches. Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles, including the principle that equity aids the diligent and not those who slumber on their rights. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding). Whether a party's delay in asserting its rights precludes mandamus relief depends on the circumstances. *In re Oceanografia, S.A. de C.V.*, 494 S.W.3d 728, 729 (Tex. 2016) (orig. proceeding) (per curiam). In examining this issue, we consider whether there is any justification for the delay, whether the party seeking mandamus bears fault for the delay, and whether the delay has prejudiced the opposing party. *See id*. at 730–31; *see also, e.g., In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675–76 (Tex. 2009) (orig. proceeding); *In re E.I. du*

5

*Pont de Nemours & Co.*, 92 S.W.3d 517, 524–25 (Tex. 2002) (orig. proceeding); *Rivercenter Assocs.*, 858 S.W.2d at 367.

The trial court orally announced at the conclusion of the hearing on October 12, 2020, that it was in the best interest of the child "to stay with mom and for grandma to have visitation" and set entry by submission for October 23, 2020. On November 5, 2020, Mother filed her objection to the entry of the temporary orders and motion for reconsideration of the temporary orders. On November 23, 2020, the trial court signed the temporary orders.

Grandmother has failed to assert that Mother's purported delay in seeking mandamus relief resulted in her detrimental change in position. *See Oceanografia, S.A. de C.V.*, 494 S.W.3d at 730–31; *see also In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (per curiam) (explaining that, to invoke equitable doctrine of laches, moving party ordinarily must show, among other things, detrimental change in position because of delay). We need not address whether Mother unreasonably delayed in seeking relief in this court or whether the delay was justified. We conclude that Mother's request for relief is not barred by laches.

## II.    MOTHER IS ENTITLED TO THE FIT-PARENT PRESUMPTION

The fundamental liberty interest of parents in the care, custody, and control of their children is of constitutional dimensions. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000). There is a presumption that fit parents act in the best interest of their children. *Id.* at 68. "[S]o long as a parent adequately cares for his or his children (i.e., is fit), there will normally be no reason for the State to inject itself into the

private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68–69.

Texas similarly recognizes that "[t]he presumption that the best interest of the child is served by awarding custody to [a] parent is deeply embedded in Texas law." *C.J.C.*, 603 S.W.3d at 807 (internal quotation marks and citations omitted). The presumption that a fit parent acts in the best interest of his or her child applies when modifying an existing order that names a parent as the child's managing conservator and the parent has a "fundamental right to make decisions concerning the care, custody, and control" of the child. *Id.* at 808 (quoting *Troxel*, 530 U.S. at 72). Therefore, a court must apply the presumption that a fit parent, not the court, determines the best interest of the child in any proceeding in which a nonparent seeks conservatorship or access over the objection of a child's fit parent. *Id.* at 817. The question of the degree of evidence necessary to overcome the presumption that a fit parent's decisions are in the best interest of the child when a nonparent, who has acted in a parent-like role, seeks visitation remains unanswered. *Id.* at 823 (Lehrmann, J., concurring).

Mother asserts that the trial court could not have appointed her sole managing conservator unless it found that she was a fit parent. *Cf.* Tex. Fam. Code Ann. § 153.131(a) (providing, in original suit affecting parent-child relationship, that court shall appoint parent sole managing conservator unless court finds that appointment of parent "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotion development"). Therefore, having found Mother to be a fit parent, the trial court had

7

no discretion to appoint Grandmother possessory conservator over Mother's objection.

Grandmother claims that she rebutted any fit-parent presumption that Mother may have had as demonstrated by the trial court's appointment of Grandmother as possessory conservator. Grandmother asserts that Mother's removing the child from the Arbor School and enrolling him in a public school shows that she is not a fit parent. Grandmother stated that the child "doesn't learn anything at that public school" and "their staff is not trained for special needs kids." Grandmother explained that she knows this "[b]y reading articles."

Grandmother believed that if the child remained at the Arbor School, he would be able to take care of himself when he turns 18, although she admitted that the child will always need some help after he turns 18. She told the court that she was requesting that the child be returned to the Arbor School. The Arbor School offered to allow the child to stay there tuition-free for another semester. However, Grandmother provided no evidence regarding that she or Mother could afford for the child to continue at the Arbor School after the one free semester.

Karen Johnson, the child's occupational therapist at the Arbor School opined that the education the child is receiving at the public elementary school is not as good as the education he was receiving at the Arbor. Johnson stated that she knows in general the services provided in the public schools: public school class sizes are larger with students of both lower and higher academic and functional abilities in one classroom and there is less one-on-on teaching. Johnson, however, has not personally seen the child's new class at the elementary school.

8

Katy Wallace teaches fundamental skills for students with significant disabilities at Meridiana Elementary School. Wallace creates individualized and alternate curricula, which focus on fundamental academics—communications skills, social skills, and prevocational skills—to help those students be successful in life. She works closely with a speech therapist, an occupational therapist, and "other related services personnel." Wallace testified that, while enrolled in her class, the child was receiving speech therapy and an occupational therapy evaluation was performed on him. Wallace described the child's demeanor:

> Oh, [the child] is so, so, so sweet. He jumped right on in to our routine. He is very, very social. Got along with all of the kids; he made friends within his first day or two there that he kind of stuck with. Just a very, very sweet kid. Everyone knew him within a week of him being there; would tell him hi, and he would say hi back. Just very, very willing to do whatever was asked of him.

Wallace met Grandmother, who asked about homework. Wallace responded that there was not specific homework for each child because the children work hard during the day and she wants the children to relax and spend time with their families. Grandmother requested that Wallace give the child homework, and Wallace said she would see what she could do.

When the child started in her class, Wallace had 11 students. She did not see any regression in the child but saw "a lot of growth just in those few weeks he was with me." Wallace testified about the child's growth she observed:

> His abilities to work independently. And I know in the beginning he was overwhelmed with a lot of change, but he fell into the routine — he adapted to the routine really, really well and he was able to do a lot of his work independently, whereas when he first started he kind of needed a lot of prompting.

9

After the COVID-19 pandemic started, the classes were held online. Wallace and Mother "kept in very close contact" when the child was in her class both during in-person and online classes. Mother was very involved with the child. Wallace had no concerns about the child moving from a private school to a public school.

Grandmother's testimony that moving the child to a public school was not in the best interest of the child was not based on any personal knowledge about how the child is doing in his new school or the curriculum provide to the child. Similarly, Johnson's opinion that the education the child is receiving at the public elementary school is not as good as the education he was receiving at the Arbor is not based on personal knowledge as she not seen or observed the child's new class but on her "general" knowledge of the services provided in public schools. The record does not reflect that Mother was not acting in the child's best interest by enrolling him in a public school.

Grandmother also suggests that Mother's living with her long-time boyfriend, Alan, is not in the child's best interest. Grandmother believes that Mother lacks the ability to provide a safe environment and place for the child to live.

Mother and Alan have been in a relationship since 2013. Grandmother testified that Alan has been "very aggressive" with her and has insulted her. From Mother, Grandmother knew that Mother and Alan had broken up in the fall of 2019, although Grandmother was not sure of the date. There was an incident in October 2019 when Mother called the police to escort her into the house to retrieve her belongs. Alan testified that there are no plans in the near future for Mother to leave the house and the court should not being concerned that Mother and the child would

not have a place to live at any point in the near future. Mother testified that, if Alan asks her and the child to leave, she can find her own place because she has savings.

Witnesses testified that Alan is good with the child. Aaron Strauss, the child's soccer coach in summer of 2019, observed that Mother's and Alan's interactions with the child at soccer games were "positive" and they encouraged him to play. Wallace also testified that Alan is also very involved with the child. Wallace spoke to Alan daily because he was responsible for picking up the child from school. Wallace observed that Alan and the child "had a very unique bond," which "was really cool to see"; Alan and the child "were very close"; and Alan was "very, very good" with the child.

Alan is able to provide for the financial needs of the child and he and Mother are prepared to pay for the child's extracurricular activities and has already set up karate lessons for the child. He is not involved in disciplining the child. The record does not support Grandmother's claim that Mother's relationship with Alan is not in the child's best interest.

The trial court's prior orders never gave Mother's anything less than joint managing conservatorship or ordered supervised visitation in the possession orders, suggesting that the trial court had previously found that Mother is a fit parent. To find that Mother is an unfit parent, the trial court would have had to reduce Mother's conservatorship rights and duties. Based on the record, the only decision the trial court could have reached is that Mother entitled to the fit-parent presumption.

Grandmother argues that the trial court is authorized to consider her as a possessory conservator. *See Shook v. Grey*, 381 S.W.3d 540, 543 (Tex. 2012) (per

11

curiam) ("If [grandmother] fails to overcome that the presumption that a parent should be named managing conservator on remand, the trial court may still name [grandmother] as a possessory conservator or grant her access that would be in G.W.'s best interest."). However, the Texas Supreme Court's decision in *C.J.C.* forecloses consideration of Grandmother as possessory conservator over a fit parent's objection. *See* 603 S.W.3d at 820 ("When a nonparent requests conservatorship or possession of a child, the child's best interest is embedded with the presumption that it is the fit parent—not a court—who makes the determination whether to allow that request."); *see also id.* at 822 (Lehrmann, J., concurring) (discussing holding in *Shook*, but reiterating holding that even when nonparent with standing seeks possessory conservatorship or access rather than or in alternative to managing conservatorship, best-interest determination necessarily encompasses constitutionally required deference to fit parent's decisions).

Because Grandmother did not overcome the fit-parent presumption that Mother acts in the best interest of the child, the trial court abused its discretion by appointing Grandmother possessory conservator over Mother's objection. Moreover, Mother does not have an adequate remedy by appeal. Mandamus is appropriate when the trial court abuses its discretion by permitting a nonparent possession of a child over a fit parent's objection. *See id.*, at 811; *see also In re Derzapf*, 219 S.W.3d 327, 335 (Tex. 2007) (orig. proceeding) (per curaim) ("The temporary orders here divest a fit parent of possession of his children, in violation of *Troxel*'s cardinal principle and without overcoming the statutory presumption that the father is acting in his children's best interest. Such a divesture is irremediable, and mandamus relief is therefore appropriate.").

12

## III. Mother Did Not Request That Grandmother Be Named Possessory Conservator

Grandmother claims that the trial court's appointment of her as possessory conservator is consistent with Mother's desire that Grandmother have access to the child based on the following testimony by Mother at the September 2, 2020 hearing:

Q     Okay. And, again, did you ever tell her that she couldn't see the child, if there was any limitations on her being able to communicate --

A     No, I never did.

Q     And do you believe that it's in the best interest of the child that [the child] maintain some type of relationship with [Grandmother]?

A     Yes.

Q     And has it ever been your desire to prevent him from having a relationship with her?

A     No.

. . . .

Q     (By Mr. Torres) So do you believe that it's in the best interest of your son that you be the only conservator of the child?

A     Yes.

Q     And at this point, are you asking the Court to grant some type of grandparent access to Mrs. Alvarez?

A     Some.

. . . .

Q     Do you believe that it's in the best interest of the child to be with you as primary conservator?

13

A      Yes.

Q      And do you believe it's in the best interest of the child to continue having a relationship with his grandmother?

A      Well, of course.

After Grandmother filed a petition to modify the parent-child relationship or, alternatively, a petition for grandparent possession or access, Mother filed an answer, which included motion to dismiss for lack of standing and, alternatively, that Grandmother must show that Mother is an unfit parent, which Grandmother had not done. Mother also asserted that she had not restricted Grandmother's possession of or access to the child.

On July 1, 2021, Mother filed a motion to dismiss for lack of standing. Mother argued, alternatively, that Grandmother would have to overcome the fit-parent presumption to be appointed managing or possessory conservator under the Texas Supreme Court's decision in *C.J.C.* Similarly, on July 8, 2021, Mother filed a no evidence motion for summary judgment on the grounds that Grandmother lacks standing and that Grandmother cannot overcome the presumption that Mother is a fit parent.

During closing statements, Grandmother's counsel argued for appointing Grandmother as primary conservator with Mother having visitation or, alternatively, that Grandmother continue to have visitation. Grandmother's counsel did not argue that Mother wanted Grandmother to be appointed possessory conservator.

Mother testified that she should be the only conservator. Mother's counsel argued that Grandmother had not overcome the fit-parent presumption and "should

14

not get any type of conservatorship" pursuant to *C.J.C.* Mother's counsel further stated that Mother was not opposed to Grandparent access.

The trial court announced at the conclusion of the hearing that Mother it was in the best interest of the child "to stay with mom and for grandma to have visitation." Based on *C.J.C.*, Mother objected to the entry of the temporary orders appointing Grandmother possessory conservator and move for reconsideration of those temporary orders because Grandmother had not rebutted the fit-parent presumption. The trial court subsequently signed the order directing that Grandmother, as possessory conservator, have many of the same rights and duties as Mother.[3]

Mother contends that her desire to maintain some visitation is not consent to Grandmother's appointment of possessory conservatorship with a standard

---

[3] The temporary orders provide Mother and Grandmother each with the right (1) to receive information from any other conservator of the child concerning health, educations, and welfare of the child; (2) to confer with the other conservator to the extent possible before making a decision concerning the health, education, and welfare of the child; (3) of access to medical, dental, psychological, and educational needs of the child; (4) to consult with a physician, dentist, or psychologist of the child; (5) to consult with school officials concerning the child's welfare and educational status, including school activities; (6) to attend school activities, including school lunches, performances, and field trips; (7) to be designated on the child's records as a person to be notified in case of an emergency; (8) to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and (9) to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

The trial court ordered that their respective periods of possession, Mother and Grandmother each had the following rights and duties: (1) duty of care, control, protection, and reasonable discipline of the child; (2) the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure; (3) the right to consent for the child to medical and dental care not involving an involving an invasive procedure; and (4) the right to direct the moral and religious training of the child.

15

possession order. We agree. Mother testified that she: (1) never denied Grandmother possession or access to the child; (2) never told Grandmother that she could not see or communicate with the child; and (3) never desired to prevent the child from having a relationship with Grandmother. Instead, Mother stated that she believed it is in the child's best interest to continue to have a relationship with Grandmother. However, Mother has consistently, throughout the modification proceedings asserted that she was entitled to the fit-parent presumption as to Grandmother's requests for appointment as managing conservator or, alternatively, possessory conservator.

## CONCLUSION

We hold that the trial court abused its discretion by appointing Grandmother possessory conservator and Mother does not have an adequate remedy by appeal. Accordingly, we grant Mother's mandamus relief and direct the trial court to vacate its November 23, 2020 temporary orders. We are confident the trial court will act in accordance with this opinion and we will not need to order the clerk of this court to issue a writ of mandamus. Mother's motion for expedited consideration is dismissed as moot. Our January 7, 2021 stay of proceedings is lifted.

PER CURIAM

Panel consists of Justices Bourliot, Zimmerer, and Spain.

16